# EXHIBIT B

**≡FOLEY**

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202-5306
414.271.2400 TEL
414.297.4900 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
414.297.5554
bhouse@foley.com EMAIL

CLIENT/MATTER NUMBER
115885-0101

April 4, 2018

**Via Federal Express and Email**

Robert B. Weiser
Richard A. Maniskas
The Weiser Law Firm
22 Cassatt Avenue
Berwyn, PA 19312

Re: Response to Turney Shareholder Demand of October 14, 2016

Dear Messrs. Weiser and Maniskas:

I write in response to your firm's October 14, 2016 letter (the "Demand Letter") to the Board of Directors of Stericycle, Inc. (the "Company") on behalf of Mr. Damon Turney, who you identify as a Company shareholder. Your letter demands that the Company's Board: (i) undertake an independent internal investigation into purported violations of Delaware and/or federal law; and (ii) commence a civil action against members of the Company's management to recover damages allegedly sustained by the Company as the result of alleged breaches of fiduciary duty as described in your letter.

In response, on January 9, 2017, the Board passed a resolution creating the Demand Review Committee (the "Committee") consisting of the following directors: Lynn D. Bleil, a retired Director of McKinsey & Company; Mike Zafirovski, former CEO of Nortel Networks Corporation and former President and COO of Motorola, Inc.; Robert Murley, former Credit Suisse Chairman of Investment Banking in the Americas and presently a Senior Advisor to Credit Suisse; and Brian Anderson, former Senior Vice President and CFO of Baxter International and OfficeMax, Inc. The Committee's charge was to conduct an investigation and inform the full Board regarding its conclusions and recommended response to the Demand Letter. The resolution creating the Committee authorized the Committee to hire counsel and other experts to assist it in its work. To that end, the Committee met by phone on January 23, 2017 and January 24, 2017 to consider potential law firms to act as its counsel and to interview representatives of those firms. On February 15, 2017, the Committee met again in connection with that process and selected our firm, Foley & Lardner LLP ("Foley"), as its independent counsel.

On February 23, 2017, the Company's counsel, Latham & Watkins, notified you by letter that the Company had established the Committee to investigate the allegations in the Demand Letter and that Foley had been retained to assist the Committee. On April 25, 2017, we sent a follow-up letter confirming our retention as the Committee's counsel and inviting Mr. Turney to

BOSTON          JACKSONVILLE     MILWAUKEE      SAN DIEGO        TAMPA
BRUSSELS        LOS ANGELES      NEW YORK       SAN FRANCISCO    TOKYO
CHICAGO         MADISON          ORLANDO        SILICON VALLEY   WASHINGTON, D.C.
DETROIT         MIAMI            SACRAMENTO     TALLAHASSEE


FOLEY & LARDNER LLP

Messrs. Robert B. Weiser and Richard A. Maniskas
April 4, 2018
Page 2

provide any evidence or information that he wished to bring to the Committee's attention. We received no response to our April 25, 2017 letter.

After an extensive inquiry, the Committee has completed its review of the matters raised in the Demand Letter and reported its findings and recommendations to the Board. As described below, based on the Committee's work, the Board has accepted the Committee's recommendation and unanimously resolved that it is not in the Company's best interests to commence a civil action against any of the Company's current or former officers, directors, or employees as demanded in the Demand Letter.

1. Demand Review Committee Investigation

Beginning in late February, Foley, acting at the direction of the Committee, began the process of collecting and reviewing documents relating to the Company's small quantity ("SQ") pricing practices and the related allegations in the Demand Letter. Early in its investigation, the Committee built on the work of Parsons Behle & Latimer PLC, the law firm representing the Company in the defense of the recently settled customer class action pending in the United States District Court for the Northern District of Illinois (the "class action"). Foley obtained the Parsons Behle document database for the period ending in March 2013 (when the class actions were filed). The database consisted of more than 1 million documents, including emails. Foley also obtained transcripts of the depositions taken (along with exhibits) from the class action.

Because the documents collected in connection with the class action related to the period ending in early 2013, the Committee and Foley worked with the Company to obtain additional information for the period March 1, 2013 to the present. Foley obtained approximately 2 million additional emails and other documents for this time period from the following custodians: Charlie Alutto, Brent Arnold, Chris Bosler, Frank ten Brink, Jim Buckman, James Campanella, Richard D'addario, Dan Ginnetti, Todd Hankla, Rich Kogler, Michael Kravets, Mark Miller, Mark Moore, Jim Otlewis, Dale Parchois, Kevin Pollack, and John Schetz.

Foley also obtained additional materials from the Company's server associated with current and former senior executives, namely Messrs. Alutto, Arnold, Ginnetti, Miller, ten Brink, and Kogler. These materials totaled nearly 30,000 documents. Foley had access to the Company's servers and an opportunity to collect information relevant to its inquiry. Finally, Foley also collected hard copy corporate records, including, but not limited to, materials relating to Board meetings and earnings conference calls.

In addition to reviewing these documents, from late May 2017 through mid-December 2017, the Committee conducted 34 interviews of 32 different witnesses, including directors, current employees, former employees, and the Company's advisors. The attached Exhibit A reflects the witnesses interviewed. One or more members of the Committee attended each of the interviews of the current and former executives, many of the interviews of non-executive employees,



Messrs. Robert B. Weiser and Richard A. Maniskas
April 4, 2018
Page 3

and certain of the interviews of the Company's outside counsel. In these interviews, Foley and the Committee members questioned the witnesses about the Company's pricing practices and related matters.

The Company cooperated fully with the Committee's requests for documents and interviews. The Committee was able to review all information it sought and interview all employees it requested.

2. Demand Review Committee Meetings

Throughout its fact-gathering process, Foley and the Committee regularly discussed the status and substance of the investigation. The Committee met fourteen times in connection with its work. In addition to the above-referenced meetings on January 23, 2017 (telephonic), January 24, 2017 (telephonic), and February 15, 2017 (in person), the Committee met on March 24, 2017 (telephonic), April 28, 2017 (telephonic), May 23, 2017 (in person), June 27, 2017 (telephonic), August 15, 2017 (in person), September 26, 2017 (telephonic), November 15, 2017 (in person), December 20, 2017 (in person), January 29, 2018 (telephonic), February 14, 2018 (telephonic), and February 28, 2018 (in person).

Foley also engaged in regular communications with Committee members, particularly Ms. Bleil in her role as the Committee Chair. Ms. Bleil, in turn, provided updates concerning the activities of the Committee to the Company's Board at its regular meetings.

The Committee completed the bulk of its historical fact-gathering work with the conclusion of interviews in mid-December. The Committee's subsequent meetings with Foley focused on follow-up fact-gathering, the findings of the review, and potential recommendations to be made to the Board. At these meetings, the Committee members engaged in extensive deliberation and discussion, including careful consideration of whether it was in the Company's best interests to commence a civil action against any of the Company's current or former directors, officers, or employees. During these meetings, the Committee members sought, and received, advice from Foley. Among other things, the Committee discussed at length the claims suggested by the Demand Letter and any other claims that the Company could potentially assert against the Company's current or former directors, officers, or employees.

In its deliberations, the Committee also considered the implications of commencing civil actions, including the expense of litigation, the obligation to advance defense costs for the defendants during the litigation, distraction to management, negative publicity, and the impact on employee morale and customer relationships. The Committee also considered various changes and improvements that Stericycle management has implemented, including upgrades with respect to personnel, systems, internal controls, and corporate governance enhancements, since the events described in the Demand Letter. Among other things, the Committee considered governance changes impacting the makeup of the Board of Directors and its Committees and developments in



Messrs. Robert B. Weiser and Richard A. Maniskas
April 4, 2018
Page 4

Board and Committee governance guidelines and charters. Notably, two of the Committee members, Messrs. Anderson and Murley, joined the Board in January 2017.

In addition, the Committee considered the significant investments the Company had made in upgrading and expanding its control structures, including increased and improved internal accounting, audit and financial controls staff, the planned implementation of a new ERP system and new processes for the Audit Committee and senior executives. The Committee further considered substantial growth in both the Company's legal and compliance functions with the hiring of new and experienced individuals into the General Counsel, Chief People Officer, Chief Compliance Officer, and V.P. Compliance roles. The Committee noted that the Company has adopted or improved formal and robust Disclosure Committee and Compliance Committee processes, revised many policies, including its Code of Business Conduct, Anti-Corruption and Antitrust Policies, whistleblower hotline, and altered compensation and incentive programs based on a comprehensive evaluation performed by a compensation consultant at the request of the Compensation Committee.

The Committee further considered the Company's progress in moving beyond litigation involving its pricing practices and efforts to improve its relationships with customers. The Committee considered that the Annual Price Increase strategy at issue in the customer class action was developed many years ago by executives who are no longer members of management, that in the customer class action settlement agreement the Company had agreed to standardized contracts with fixed annual price increases and more transparency regarding pricing and cost increases, and that the Company had invested in additional data analytics to improve the Company's ability to analyze and implement SQ pricing strategies.

The Committee noted that this is an important time for the Company in light of its recent performance and depressed stock price and that the Company has intently focused on its future, including through its announced "Business Transformation" designed to improve long-term operational and financial performance.

Following the above-described deliberations and discussions, the Committee determined and resolved to recommend to the Board that commencing a civil action against any of the Company's current or former directors, officers, or employees would not be in the best interests of the Company and its stockholders.

3. Board Deliberations and Determinations

On March 1, 2018, the Committee and Foley met with the full Stericycle Board to report on the results of its review. During the meeting, Ms. Bleil and Foley described the Committee's process, findings, observations and its recommendation – specifically, that based on its investigation, the Committee recommended that the Board resolve not to assert any civil actions against any of the Company's current or former directors, officers, or employees. The non-management directors discussed the Committee's report and asked questions of the Committee



**FOLEY**
FOLEY & LARDNER LLP

Messrs. Robert B. Weiser and Richard A. Maniskas
April 4, 2018
Page 5

members and Foley. Due to lateness of the hour and travel schedules of certain Board members, the discussion concluded, with the understanding that it would be resumed at a later date.

On March 9, 2018, the Board meeting resumed by telephone with Chairman Mark Miller being the only director unable to attend. At that time, the directors unanimously adopted the recommendation of the Committee as a resolution of the Board.

\* \* \*

In summary, the Demand Review Committee of the Board of Directors of Stericycle, Inc. has thoroughly investigated the claims made in your letter of October 14, 2016 and reported its findings and recommendations to the Board. The Board has considered your letter and the findings and recommendations of the Committee and concluded that commencing a civil action against any of the Company's current or former directors, officers, or employees would not be in the best interests of the Company and its stockholders.

Very truly yours,

Bryan B. House

cc:  Lynn Bleil, Chair of Demand Review Committee
     Kurt M. Rogers, Stericycle Executive Vice President and General Counsel

# EXHIBIT A

<u>Non-Management Directors</u>

1. Brian Anderson
2. Lynn Bleil
3. Tom Brown
4. Thomas Chen
5. Rod Dammeyer
6. William Hall
7. Robert Murley
8. John Patience
9. Jack Schuler
10. Mike Zafirovski

<u>Employees (Other Than Senior Executives)</u>

11. Chris Bosler  (former employee)
12. Jim Buckman
13. Courtenay Casaccio
14. Laura Cunico
15. Brenda Frank
16. Sean McMillan
17. Anthony Ordoqui
18. Dale Parchois
19. Kevin Pollack
20. John Schetz
21. Justin Stump

22. Bob Tangredi (former employee)

23. Ryanne Wood

<u>Outside Counsel</u>

24. Michael Bonn of Johnson & Colmar

25. Craig Colmar of Johnson & Colmar

26. Ray Etcheverry of Parsons Behle & Latimer

<u>Current and Former Top Executive Officers</u>

27. Brent Arnold

28. Charlie Alutto

29. Dan Ginnetti

30. Rich Kogler

31. Mark Miller

32. Frank ten Brink